# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Camie P.,

      Plaintiff,

v.

Nancy A. Berryhill, Acting Commissioner
of Social Security,

      Defendant.

Case No. 18-cv-1401 (ECW)

**ORDER**

This matter is before the Court on Plaintiff Camie P.'s ("Plaintiff") Motion for Summary Judgment (Dkt. No. 12) and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Defendant") Motion for Summary Judgment (Dkt. No. 14). Plaintiff filed this case seeking judicial review of a final decision by Defendant denying her application for disability insurance benefits. For the reasons stated below, Plaintiff's Motion is denied, and Defendant's Cross-Motion is granted.

## I.    BACKGROUND

Plaintiff filed a Title II application for disability insurance benefits on May 4, 2015, alleging disability beginning on April 24, 2015. (R. 175-88.)[1] Plaintiff claimed she was disabled due to her hypertension, osteoarthritis, myofascial pain syndrome, dysthymic disorder, anxiety disorder, and two hip replacements. (R. 79.) Her application

---

[1]    The Social Security Administrative Record ("R.") is available at Dkt. No. 8.

was denied initially and on reconsideration. (R. 107-10, 112-14.) On May 5, 2017, Plaintiff amended her alleged disability onset date to January 13, 2017. (R. 222.) Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on May 5, 2017 before ALJ Michael N. Balter. (R. 11-15.) The ALJ issued an unfavorable decision on July 3, 2017, finding that Plaintiff was not disabled. (R. 25.)

Following the five-step sequential evaluation process under 20 C.F.R. § 404.1520(a),[2] the ALJ first determined at step one that Plaintiff had not engaged in substantial gainful activity since January 13, 2017. (R. 17.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative joint disease in both knees and both hips; residuals of bilateral total hip arthroplasties and total knee arthroplasties; and myofascial pain syndrome. (R. 18.) The ALJ also determined that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (R. 18.)

---

[2] The Eighth Circuit described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

At the third step, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. (R. 19.)

At step four, after reviewing the entire record, the ALJ concluded that Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform work sedentary work as defined in 20 CFR 404.1567(a) except the claimant must be allowed a 1 to 2 minute period of position change after 30 minutes of continuous sitting,

(R. 19.)

The ALJ concluded that based on the above RFC, Plaintiff was capable of performing past relevant work as a substance abuse counselor. (R. 24.) Accordingly, the ALJ deemed Plaintiff not disabled. (R. 25.)

Plaintiff requested review of the decision. (R. 7.) The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1-3.) Plaintiff then commenced this action for judicial review.

On June 10, 2019, Plaintiff filed an Amended Request for Relief. (Dkt. No. 17; Dkt. No. 17-1.) In her amended request, Plaintiff notified the Court of the Commissioner's decision to approve her claim for disability benefits on reapplication with an onset date of disability of July 4, 2017, the day after ALJ issued his decision. (*Id.*) Plaintiff amended her request for relief and asks that any remand order issued by the Court relate specifically to whether she is entitled to a period of disability and disability benefits beginning on her amended alleged onset date of January 13, 2017 and closing on July 3, 2017, the day prior to her July 4, 2017 onset of disability as found by

3

the Commissioner as part of her re-application claim. The Commissioner agrees that this Court's review is limited to the period between January 13, 2017, Plaintiff's amended alleged onset date, and July 3, 2017, the date of the ALJ's decision. (Dkt. No. 18.)

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II. RELEVANT MEDICAL AND WORK RECORD

Throughout 2014 and 2015, Plaintiff had been diagnosed and treated for anxiety. (*See, e.g.*, R. 419-21, 426-27, 443-45, 533-34, 537.)

On April 4, 2016, Plaintiff reported to her medical provider, Lara N. Lunde, M.D., that she wanted to undergo a medication "washout" and had been cutting back on Cymbalta and Zoloft. (R. 557.) Plaintiff reported not even knowing what her mood was because she felt like she may have been on too many medications. (*Id.*) Plaintiff denied suffering from anxiety at this time. (*Id.*) In a subsequent visit with Dr. Lunde on July 11, 2016, it was reported that Plaintiff was doing "fairly well" and that she had taken herself off Cymbalta and was "actually feeling a lot better." (R. 555.) In a follow-up visit on October 14, 2016 for depression/anxiety, Plaintiff reported that her symptoms had remained unchanged since the previous visit. (R. 551.)

On December 21, 2016, just prior to her amended onset date of disability, January 13, 2017, it was reported by Dr. Lunde that Plaintiff had "**no significant anxiety, depression, or panic**." (R. 549 (emphasis added).)

4

During the hearing before the ALJ, Plaintiff testified that she had been suffering from anxiety (R. 50), but she noted that she had been doing "better," in part, because of "a lot better medications." (R. 51.) There are no medical notes in the record dealing with anxiety (except for the note regarding medication set forth below) from the amended onset date of disability, January 13, 2017, through the date of the ALJ's decision. Sometime between March and April 2017, Dr. Lunde, in response to a letter from Plaintiff's counsel asking her for a description of the limiting effects of her impairments in support of Plaintiff's application for disability benefits, opined that Plaintiff was suffering from depression with no marked limitations to her daily activities of living, her concentration/pace, or her social functioning. (R. 604.) Dr. Lunde made no mention of Plaintiff suffering from anxiety in this assessment, although Plaintiff did self-report that she was on medication for "depression, anxiety, and blood pressure." (R. 604, 612.)

Plaintiff worked as an addiction counselor through early January 2017 until she underwent bilateral knee arthroplasties in January 11, 2017 for her degenerative joint disease. (R. 20, 39-40, 220, 223, 574-75.)

### III. LEGAL STANDARD

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or if the ALJ's decision resulted from an error of law. *Nash v. Comm'r, Soc. Sec. Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)). "'Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to

support the Commissioner's conclusions.'" *Id.* (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). The Court "considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.* (citation omitted). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *See Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004).

## IV.  DISCUSSION

### A.  Parties' Arguments

Plaintiff argues that the "ALJ's failure to assess [P.'s] anxiety as severe or non-severe at step 2 is reversible error which necessitates remand." (Dkt. No. 5 at 4.) Plaintiff argues that a failure to properly assess an impairment as severe at step 2 is not "harmless error." (*Id.* at 5 (citing *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007).) According to Plaintiff, where courts have questioned whether an error at step two requires remand per se, they have done so only in cases where a medically-determinable impairment was improperly assessed as non-severe, not where—as here—an ALJ purportedly failed to assess a medically determinable impairment. (*Id.* at 7.)

The Commissioner counters that Plaintiff neither asserts that her anxiety was a severe impairment nor challenges the ALJ's RFC. (Dkt. No. 15 at 7, 10.) Therefore, the Commissioner asserts that any error at step two would not have an impact on the outcome of this case. (*Id.*) The Commissioner also argues that courts have repeatedly held that an

6

ALJ's failure to find a specific impairment severe at step two is not per se reversible error as long as the ALJ found the claimant had at least one severe impairment and proceeded to the next step in the sequential evaluation, which occurred in this case. (*Id.* at 8-9.) In addition, the Commissioner argues that the ALJ discussed Plaintiff's anxiety in the decision and that despite her alleged anxiety she was able to work through her 2017 surgery. (*Id.* at 9.)

In her reply, Plaintiff's main argument was that the majority of cases relied upon by the Commissioner are factually distinguishable from the present case because the ALJs in those cases in many instances at least found that the impairment at issue was non-severe. (Dkt. No. 16 at 3-4.) Plaintiff also argues that there is nothing in the ALJ's decision indicating that her anxiety was even considered at step three of the analysis (under the "B" criteria of the listings) or as part of the RFC analysis. (*Id.* at 3-4.)

**B.     Analysis**

At the second step, the SSA considers "the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). It is a claimant's burden to demonstrate a severe medically determinable impairment at step two of the sequential evaluation, but that burden is not difficult to meet and any doubt about whether the claimant met her burden is resolved in favor of the claimant. *See Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citations omitted). An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *See id.* at 707; 20 C.F.R. § 416.920(c). The severity showing "is not an onerous requirement for the

7

claimant to meet, but it is also not a toothless standard." *Kirby*, 500 F.3d at 708 (cleaned up).

As set forth previously, the ALJ concluded that Plaintiff had severe impairments, including degenerative joint disease in both knees and both hips; residuals of bilateral total hip arthroplasties and total knee arthroplasties; and myofascial pain syndrome. (R. 18.) The ALJ also determined that Plaintiff's "medically determinable mental impairment of depression" was not severe. (R. 18.) In making his determination, related to Plaintiff's mental impairment the ALJ found as follows:

> The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.
>
> In making this finding, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four areas of mental functioning are known as the "paragraph B" criteria.
>
> The evidence does not support a finding of greater than mild limitation in any area of basic mental functioning, including understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and in adapting or managing herself.
>
> Concerning the above, the records show some evidence of depression secondary to the claimant's physical pain. However, she managed to perform highly skilled work despite the diagnoses and treatment. She was also competent in all areas of the work that she performed through January 2017 (21E). The overall medical evidence of record also does not indicate any particular problems in terms of the claimant's mentation and cognition or in her social comportment. **In addition, she was noted just before her amended alleged onset date as intact from a mental standpoint, with notation of no history of focal neurologic symptoms, no spells, no memory issues, and <u>no significant anxiety</u>, depression, or panic** (Ex. 12F, pg. 5). The evidence also does not reflect deterioration in the claimant's mental status after the amended alleged onset date and through the date of

> this decision. Thus, the undersigned is satisfied that any limitations caused by the claimant's depression appear to be minimal.
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas, it is nonsevere (20 CFR 404.1520a(d)(1)).

(R. 18 (emphasis added).)

Although the ALJ discusses Plaintiff's anxiety as part of his evaluation regarding Plaintiff's depression, the ALJ failed to specifically decide whether Plaintiff's anxiety was an impairment—non-severe or severe. The Commissioner does not dispute this fact. As such, the Court must determine whether this error is harmless. In *Nicola v. Astrue*, 480 F.3d 885 (8th Cir. 2007), the plaintiff contended that she was disabled, in part, due to borderline intellectual functioning. *Id.* at 886. On appeal, the claimant "assert[ed] that the ALJ erred in failing to include her diagnosis of borderline intellectual functioning as a severe impairment at step two of the sequential analysis." *Id.* at 887. Although the Commissioner in *Nicola* conceded that the plaintiff's borderline intellectual functioning should have been considered a severe impairment, the Commissioner argued that the ALJ's error was harmless. *Id.* The Court of Appeals for the Eighth Circuit "reject[ed] the Commissioner's argument of harmless error," noting that "[a] diagnosis of borderline intellectual functioning should be considered severe when the diagnosis is supported by sufficient medical evidence." *Id.*

Courts have been split regarding whether an error at step two can be harmless. "Some Courts have interpreted *Nicola* to mean that an error at step two can never be harmless." *Lund v. Colvin*, No. 13-cv-113 JSM, 2014 WL 1153508, at *26 (D. Minn.

9

Mar. 21, 2014) (collecting cases); *see also Moraine v. Soc. Sec. Admin.*, 695 F. Supp. 2d 925, 956 (D. Minn. 2010) ("The Court of Appeals for the Eighth Circuit has held that an ALJ's erroneous failure, at Step Two, to include an impairment as a severe impairment, will warrant a reversal and remand, even where the ALJ found other impairments to be severe."). Other courts, including other courts in this District, have refused to interpret *Nicola* as establishing a *per se* rule that any error at step two is a reversible error. *See Lund*, 2014 WL 1153508, at *26 (collecting cases).

In the absence of clear direction from the Eighth Circuit, the prevailing view of courts in this District has been that an error at step two may be harmless where the ALJ considers all of the claimant's impairments in the evaluation of the claimant's RFC. *See, e.g., Rosalind J. G. v. Berryhill*, No. 18-cv-82 (TNL), 2019 WL 1386734, at *20 (D. Minn. Mar. 27, 2019) ("Consistent with the prevailing view in this District, any potential error by the ALJ in not including Plaintiff's chronic pain syndrome as a severe impairment at step two was harmless based on the ALJ's consideration of the intensity, persistence, and functional effects of Plaintiff's pain when determining her residual functional capacity."); *David G. v. Berryhill*, No. 17-cv-3671 (HB), 2018 WL 4572981, at *4 (D. Minn. Sept. 24, 2018); *Tresise v. Berryhill*, No. 16-cv-3814 (HB), 2018 WL 1141375, at *5 (D. Minn. Mar. 2, 2018) ("Courts in this district have followed the approach set forth in *Nicola* and determined that reversal based on errors at step two is only warranted when the ALJ fails to consider the omitted impairments in the RFC."); *Lorence v. Astrue*, 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010) ("The ALJ's failure to include adrenal insufficiency as a severe impairment was not by itself reversible error,

because the ALJ continued with the evaluation of Plaintiff's pain and fatigue in determining Plaintiff's residual functional capacity.") (citation omitted).

Plaintiff argues that those cases are distinguishable from the present matter because they in large part dealt with errors at step two regarding the characterization of an impairment as non-severe, as opposed to severe. Plaintiff asserts that the harmless error analysis in those cases is inapplicable here where the ALJ failed to even identify anxiety as an impairment (non-severe or severe) at step two. In ascertaining the applicability of the harmless error analysis to an error at step two, this Court sees no reason to distinguish between situations where the error being assigned is the failure to classify an impairment as severe and the failure to address an impairment—so as long as the impairment is addressed in the evaluation of a claimant's RFC. *See Misty G. v. Berryhill*, No. 0:18-cv-00587-KMM, 2019 WL 1318355, at *4 (D. Minn. Mar. 22, 2019) ("This same reasoning applies even if an ALJ fails to discuss whether certain impairments are severe or non-severe at the second step (which is the case here), as long as the limitations caused by these impairments are adequately assessed later in the process."); *Johnson v. Comm'r of Soc. Sec.*, No. 11-cv-1268 JRT/SER, 2012 WL 4328413, at *22 (D. Minn. July 11, 2012), *R.&R. adopted*, 2012 WL 4328389 (D. Minn. Sept. 20, 2012) ("Assuming arguendo that the ALJ erred in failing to find certain impairments severe and not evaluating the severity of other impairments, that error is harmless here."). Such a finding is consistent with the Commissioner's regulations. *See* 20 C.F.R. § 404.1545(a)(1)-(2) (an ALJ must consider all relevant evidence, including non-severe impairments, in his RFC determination). This is especially the case here,

where Plaintiff is not asserting that the ALJ erred by failing to find that her anxiety, either alone or in combination with other impairments, meets or medically equals the criteria for Listings or that the ALJ failed to take her anxiety into account when assessing her functional limitations.[3] The Court will not simply remand for the sake of remand on what may amount to a technical error related to an impairment that has no bearing on Plaintiff's functional capacity during the time period in question.

Even if it were error to omit the impairment of anxiety from the list at step two, the addition of anxiety would not have affected the outcome at step three given the lack of supporting medical evidence. Indeed, there were no medical records during the alleged period of disability evidencing that Plaintiff was suffering from any limiting anxiety, the only record referencing anxiety during the period was her self-report of taking medication for anxiety (R. 612), and the last medical record before the start of the disability period noted that she had no significant anxiety. (R. 549.) Moreover, the ALJ considered Plaintiff's anxiety as part of his analysis at step three regarding the lack of limitations in any area of Plaintiff's basic mental functioning, including: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (R. 18-19.)

---

[3] These issues are therefore waived. *See Melder v. Colvin*, 546 F. App'x 605, 606 (8th Cir. 2013) (unpublished) (undeveloped argument is deemed waived). Plaintiff's argument that the RFC should be reassessed (Dkt. No. 13 at 7), with no explanation as to why a reassessment is necessary, is an undeveloped argument. That said, the Court has looked at Plaintiff's claimed anxiety and any resulting functional limitations during the relevant period as it relates to her RFC and whether the ALJ addressed her anxiety as part of his analysis.

The ALJ's RFC discussion also adequately addresses Plaintiff's functional limitations related to the symptoms that are attributable to her purported anxiety. The ALJ noted that Plaintiff reported getting along well with others but "reported anxiety" especially with big gatherings or trying to entertain, and her reports of poor memory and inability to finish tasks. (R. 19-20.) Despite these complaints, the ALJ found no limitations as to her mental functional capacity given Dr. Lunde's opinion in late December 2016 that she had no significant anxiety, depression, or panic and the fact that she was also noted as having met or exceeded performance expectations in all areas of work that she was involved in while she was a substance addiction counselor. (R. 20-21.)

This evaluation demonstrates that the ALJ considered Plaintiff's anxiety and symptoms that overlap with those commonly experienced by individuals with anxiety, and the ALJ's observations regarding their severity are supported by substantial evidence in the record. This includes Dr. Lunde's opinion in late December 2016 that Plaintiff was not suffering from significant anxiety or panic, no opinion in 2017 by Dr. Lunde that Plaintiff was suffering from anxiety, and the fact that Plaintiff was at least mentally able to perform her past work as a counselor through her January 2017 operation on her knees. (R. 20, 39-40, 220, 223, 549, 574-75, 604.) Because Plaintiff is unable to show that the impairment of anxiety was not considered by the ALJ and because she cannot show that any error at step two negatively impacted the remainder of the sequential analysis, remand is not appropriate. *See Rouse v. Comm'r of Soc. Sec.*, No. 2:16-cv-223, 2017 WL 1102684, at *2 (S.D. Ohio Mar. 24, 2017) ("Despite it being 'better practice [for an] ALJ to say explicitly which impairments are found to be non-severe and which are found not

to be medically determinable,' [the plaintiff] was nevertheless unable to show how any of the impairments the ALJ did not list as severe negatively affected her functioning or ability to complete the work listed in her RFC." (first alteration in original)).

## V.     ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Plaintiff Camie P.'s Motion for Summary Judgment (Dkt. No. 12) is **DENIED**;

2. Defendant Acting Commissioner of Social Security Nancy A. Berryhill's Motion for Summary Judgment (Dkt. No. 14) is **GRANTED**; and

3. This case is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: June 27, 2019                                *s/ Elizabeth Cowan Wright*
                                                                          ELIZABETH COWAN WRIGHT
                                                                          United States Magistrate Judge